JAMES A. BEAN v. ADAMS & BUCKINGHAM

1. A consignee is subject to the orders of the consignor as to the time and terms of a sale to be made of the property consigned, unless there be some agreement to the contrary.

2. It is the general nature of an authority to be revocable, and to make it otherwise requires a consideration. An advance of money by the consignee to the consignor may be such a consideration; and, after an advance, it may well be that the consignee has an irrevocable power of sale to reimburse his advances, as shown by the agreement in making the advance, either expressly, or from the circumstances attending the transaction.

3. But the right to sell does not result, as a conclusion of law, from the mere fact of the advance being made.

SPECIAL TERM.—The plaintiff states, that in the months of September and October, 1853, Lewis Stagg was a dealer in flour in Cincinnati, and that the defendants were then produce and commission merchants in the city of New York; that Roots & Coe were the agents at Cincinnati for the defendants; that the said defendants (by agents) and said Stagg entered into an agreement whereby the defendants were to advance to the said Stagg, on the acceptances by defendants of bills of exchange, to be drawn and negotiated for the benefit of said Stagg, to be taken up by defendants at maturity, an amount which should be equal to $4.50 per barrel upon all flour which said Stagg should consign to defendants to be sold on commission; defendants to pay all freights, charges, costs, and expenses of transpor-

tation, insurance, etc., and to hold the flour for sale in New York, under the instructions of said Stagg, until January 20, 1854, and not to be sold before that time, without such instruction, and on or after that day, to be sold for the best price the flour would command; defendants to account and pay over, on the sale, the proceeds, after deducting $4.50 per barrel, and interest on sums advanced, and expenses, commissions, freights, etc., as above mentioned; that defendants were to render account of sales, expenses, etc. That in pursuance of said agreement, the said Stagg, from time to time, during September and October, forwarded and consigned to defendants about three thousand barrels of flour, upon which the acceptances of defendants were advanced to the amount of $4.50 per barrel, and the proceeds of the discount on sale thereof, received by said Stagg; that the flour so consigned was received by defendants, and freight paid by defendants; that all of said flour was sold by defendants in New York; but that, in violation of said agreement, and of the express written instructions of said Stagg, at least twelve hundred barrels were sold long prior to January 20, 1854, at prices greatly below the market price of flour on said day, by reason whereof the profit which would have resulted to Stagg, if the flour had been kept until said day and then sold, became lost to him; that the difference between the prices at which the flour was sold and the price at which it would have sold on said day amounts to $1,640; that besides this, the defendants failed to sell the flour at the best prices which could have been obtained when the same was in fact sold; that sixteen hundred barrels were sold at ten cents per barrel less than the market price; that the defendants have also failed to render a just account, and have made charges which they were not entitled to according to agreement, and have refused to pay the amount justly due by $1,800. That the said Stagg has, for value received, assigned his claim against defendants to this plaintiff, and the plaintiff demands judgment for $1,800 and interest.

The defendants answer and say that Roots & Coe were their agents at the time mentioned, but deny that they, as such agents, had the scope and authority stated in the petition; they deny that any agreement was made by which they were to advance an amount equal to $4.50, or any specific amount upon all or any flour consigned by Stagg, or by which they were to hold the same until January 20, 1854, and not to be sold before that day without instructions from Stagg. They say that the contract was not such as stated in the petition, but that on the 29th of October, 1853, the said Stagg addressed a letter to defendants in substance asking the privilege of drawing on them as shipments are made, "for cost invoices, less twenty-five cents per barrel less than Cincinnati prices, and market quotations as a margin, as the consignments are made;" if this should meet the views of defendants, they (defendants) to address a letter to Roots & Coe to that effect. That defendants, on November 4, 1853, replied in an open letter addressed to Roots & Coe, under cover to Stagg, saying Roots & Coe were at liberty to take Stagg's drafts for shipments, accompanied by bills of lading, at a valuation of $6.25 per barrel, delivered in New York, insurance to be effected by defendants; should prices be afterward depressed below present market prices, defendants reserve the privilege of making rateable abatement in the valuation above named. That this proposition was accepted by Stagg, and was the entire and only agreement entered into by plaintiff and defendants, and that thereupon, Stagg commenced making shipments; that the agents of defendants received of Stagg from time to time, in November and December, 1854, shipping receipts for two thousand three hundred and thirty-six barrels of flour, and advanced to Stagg, on his drafts, $10,945.48; that said flour was insured by defendants in New York, and expenses of freight, etc., paid; that the flour was sold in a proper manner from time to time, with due regard to the interests of both parties; they deny that any flour was sold at less than the market price, or

that they have failed to render just accounts, or that they have made charges unauthorized, or that they have refused to come to a just account, or that they are indebted to said Stagg in any sum.

*Tilden, Rairden & Curwen,* for plaintiff.

*Bates & Scarborough,* for defendants.

GHOLSON, J. Was there an agreement between Stagg and defendants that the latter were to hold on to the flour until January 20, or any other time specified in agreement?

On this point there is a conflict of testimony. The effect of the testimony, on my mind, is to induce the conclusion that there was no such contract.

As to claim of overcharge of interest and selling contrary to instructions, and without regard to interests of consignor, these two claims can not both avail. The allowance of one defeats the other. Can either, and if either, which, be allowed? They lead to an examination of the legal rights and duties of Stagg and defendants, as consignor and consignees.

I think that it is clear, upon the general principles of law, as laid down in 54 E. C. L. 380, *Smart* v. *Sandars;* 3 Comstock, 62, *Marfield* v. *Goodhue;* and in other authorities, that a consignee is subject to the orders of the consignor as to the time and terms of a sale to be made of the property consigned, unless there be some agreement to the contrary. It is the general nature of an authority to be revocable; and to make it otherwise, requires a consideration. An advance of money by the consignee to the consignor may be such a consideration; and after an advance, it may well be that the consignee has an irrevocable power of sale to reimburse his advances, as shown by the agreement in making the advance, either expressly or from the circumstances attending the transactions.

There are expressions in the case, 14 Peters, 494, *Brown* v. *McGraw,* which might induce a conclusion that the right

of a consignee who had made an advance to sell, resulted as a conclusion of law, from the mere fact of the advance being made, and not derived from the agreement of the consignor, which agreement the fact of receiving an advance tended to establish and would be a consideration to sustain. But it is doubtful whether the court intended to be so understood. At any rate, it is now well established by the most recent cases in the English and American courts, that the right to sell contrary to the instructions of the consignor, must be derived from the consent of the latter, which is not shown from the simple fact of an advance; but which may be shown from that fact, in connection with the circumstances, and does, in fact, usually occur when, as in the present case, the advance is made contemporaneous with the shipment, and for a very heavy proportion of the value. of the article.

The consignee who has a right to sell under an agreement to secure his advances, and also an authority to sell as the factor or agent of the consignor, must, if he sells under the agreement, without reference to the interest of the consignor or his instructions, be prepared to show that the agreement has been pursued according to its true intent and purpose. If it has not been, it can not be used as a shield to protect the consignee from responsibility for a breach of duty or a violation of the orders of the consignor.

Upon an examination of the evidence in this case, and particularly the writings at the time of the commencement of the transactions, I am brought to a conclusion that there was in this case an agreement on the part of the consignor that the consignee might sell to meet the advances. The advances were made in the form of drafts having sixty days to run. From this and other circumstances in the case, I think there are two inferences to be drawn: 1st. That means to meet the drafts were to be realized by a sale, to make which sale for such a purpose, an irrevocable authority was given to the consignee. 2d. That, except as to a sale for such purpose, the consignee was bound to look to the interest of the consignor, and was subject to his orders.

The next inquiry is, whether the sales in the case were made under the agreement to meet advances, or under the general authority as factor? And I think that none of the sales made prior to the 1st of January, were made under the agreement. They were not made under any view of a necessity to meet advances. Of these sales, some were made, and an account of sales sent and received without objection, with a simple repetition of instructions. As to these, I think there can be no recovery, because an assent or acquiescence is shown, the act of the agent is approved, it is not a case of contract requiring consideration. It may or may not have been proper to sell, but the act of selling was assented to, and the order given as to subsequent sales. As to the others, I think the consignee liable, and that, under the evidence, the damage should be assessed at one dollar for each barrel so sold.

These damages being allowed, I think there is no ground to disturb the interest account.

Judgment for plaintiff for $471.33.